UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                 :
ATALLAH GROUP US INC.,                   :
                  Plaintiff,        :
                                     :         22 Civ. 7438 (LGS)
         -against-                  :
                                     :        **OPINION & ORDER**
GMA ACCESSORIES INC.,              :
                  Defendant.  :
                                     :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Atallah Group US Inc. ("Atallah") brings this action against GMA Accessories Inc. ("GMA"), alleging that GMA enters into trademark settlement agreements with competitors in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

**I.    BACKGROUND**

       The following facts are taken from the Complaint or are matters of which judicial notice may be taken, including public filings. *See Dixon v. von Blanckensee*, 994 F.3d 95, 101-02 (2d Cir. 2021); *United States v. Am. Soc'y of Composers, Authors & Publishers*, 627 F.3d 64, 69 n.2 (2d Cir. 2010). The Complaint's allegations are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

       Atallah owns an online e-commerce platform named SSENSE that specializes in the sale of designer fashion and streetwear, including products by a designer named Charlotte Knowles. GMA owns several trademark registrations for the mark "CHARLOTTE" for certain clothing, footwear and accessories ("Charlotte Registrations"). The Complaint alleges that, in 2018, GMA

entered into an improper trademark settlement agreement with Charlotte Olympia Holdings, Ltd. ("Reinstatement Agreement") that reinstated certain Charlotte Registrations that the Trademark Trial and Appeal Board ("TTAB") had deemed abandoned. GMA has sued Atallah for infringement of one of these reinstated Charlotte Registrations in a related trademark infringement lawsuit before this Court. The Complaint alleges without further detail that GMA has entered into similar agreements with other competitors, thus preserving GMA's abandoned trademarks.

The Complaint also alleges that GMA has pursued sham trademark litigation against many clothing companies that use the word Charlotte, then settled the claims via settlement agreements ("Settlement Agreements") that go on to fund further vexatious litigation, including against Atallah. The Complaint alleges that both the Settlement Agreements and GMA's reinstatement agreements with various competitors have increased clothing prices in the market. For example, Charlotte Knowles has needed to increase the price of her company's clothing to reimburse Atallah for the costs incurred by these lawsuits. The Complaint also alleges that these agreements have forced other shops to discontinue sales of their products because they cannot afford to litigate against GMA.

After Defendant moved to dismiss the Complaint, Plaintiff filed an unsuccessful motion to amend the Complaint. The memorandum of law Plaintiff filed in support of its motion to amend is construed as an opposition to Defendant's motion to dismiss. Plaintiff also filed a letter supplementing its construed opposition. Defendant filed replies responding to the arguments in both the construed opposition and Plaintiff's supplemental submission, and requested leave to file a Rule 11 motion and sought costs and fees.

II. **LEGAL STANDARD**

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and

draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon*, 994 F.3d at 101.[1] "In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

### III. DISCUSSION

#### A. Section 1 of the Sherman Act Pleading Requirements

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . ." 15 U.S.C. § 1. To plead a violation of § 1, a plaintiff must allege facts showing (1) "a combination or some form of concerted action between at least two legally distinct economic entities," and (2) the agreement's objective was an "unreasonable restraint of trade either per se or under the rule of reason." *See Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 97 (2d

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

Cir. 2018) (stating requirements at summary judgment stage so that a § 1 violation was required to be shown rather than alleged).

Trademark settlement agreements are analyzed under the rule of reason to determine if they are unreasonable restraints on trade, because they "implicate trademark policy" and "could plausibly be thought to have a net procompetitive effect." *1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 117 (2d Cir. 2021). "Rule of reason analysis seeks to determine if the alleged restraint is unreasonable because its anticompetitive effects outweigh its procompetitive effects." *Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 28 (2d Cir. 2015) (summary order). In rule of reason cases, the legality of a challenged restraint is ultimately evaluated under a three-step, burden-shifting framework. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). However, at the pleading stage, a plaintiff needs only to allege facts that, if assumed to be true, show the first step -- "that the challenged action has had an actual adverse effect on competition as a whole in the relevant market." *Edmar Fin. Co. v. Currenex, Inc.*, No. 21 Civ. 6598, 2023 WL 3570017, at *12 (S.D.N.Y. May 18, 2023) (quoting *1-800 Contacts*, 1 F.4th at 114).

A complaint can plead an actual adverse effect on competition either directly by pleading "an actual adverse effect on competition as a whole in the relevant market," or indirectly by pleading that "the defendant has sufficient market power to cause an adverse effect on competition" plus "other grounds for believing the challenged restraint harms competition" such as "price increases, reduced output or market quality, significantly heightened barriers to entry, or reduced consumer choice." *See N. Am. Soccer League LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 42 (2d Cir. 2018) (describing the first step of the rule of reason analysis for a preliminary injunction so that the requirements needed to be shown rather than alleged).

B.  Analysis

The antitrust claim is sufficiently pleaded to the extent it arises out of the Reinstatement Agreement, but does not state a claim based on the Settlement Agreements.  Both types of agreements satisfy the first element of a § 1 Sherman Act claim because they are "undeniably contracts between [Defendant] and its competitors."  *See 1-800 Contacts*, 1 F.4th at 114.  As to the second element, the Complaint sufficiently alleges that the Reinstatement Agreement had an actual adverse effect on competition as a whole in the relevant market, but the allegations about the Settlement Agreements do not satisfy this element.

1.  The Reinstatement Agreement

The Complaint pleads facts sufficient to show that the Reinstatement Agreement had a direct anticompetitive effect on competition as a whole in the relevant market.  The Complaint alleges, and Defendant does not dispute, that the relevant market is the market for women's clothing.  According to the Complaint, the Reinstatement Agreement improperly reinstated two of GMA's abandoned marks, which GMA then used to bring a series of bad-faith lawsuits alleging infringement of the Charlotte Registrations, thus increasing costs and stifling competition in the market for women's clothing.

Specifically, the Complaint alleges that GMA opposed the registration of the mark "Charlotte Olympia."  This caused the TTAB to examine and ultimately cancel two of GMA's Charlotte Registrations as abandoned because GMA had made no showing that it had used those Charlotte Registrations in commerce from 2011 to 2015.  One of the cancelled registrations listed GMA as the owner of the mark CHARLOTTE for "clothing, footwear and headgear, namely hats, scarves, gloves and socks."  GMA nevertheless then sued Charlotte Olympia Holdings, Ltd. for use of the same marks that had just been held to be abandoned.  GMA then settled the suit against Charlotte Olympia Holdings, Ltd. pursuant to the Reinstatement Agreement, under which

the parties agreed to vacate the TTAB abandonment order. The TTAB, on consent and agreement between the parties, vacated its order. The Complaint plausibly alleges that the Reinstatement Agreement was improper.

"Anticompetitive effects in a relevant market may be shown through direct evidence of output reductions, increased prices, or reduced quality in the relevant market." *1-800 Contacts*, 1 F.4th at 118. "Intellectual property protections inherently confer the power to exclude others from the use of intellectual property. Thus, it is plausible that attempts to enforce fraudulently obtained intellectual property rights would result in the exclusion of products and competitors from the market, particularly through threats or prosecution of infringement suits, and also result in supracompetitive pricing. These injuries are quintessential injuries that the antitrust laws are intended to prevent." *LEGO A/S v. ZURU, Inc.*, No. 18 Civ. 2045, 2020 WL 13145135, at *4 (D. Conn. Apr. 22, 2020).

The Complaint describes GMA as a "trademark troll," which uses the Charlotte Registrations primarily to engage in vexatious litigation, causing some competitors to stop competing with GMA and others to pay a "settlement tax" to GMA that ultimately is paid by consumers. The Complaint alleges that some boutique shops have been forced to discontinue sales of their products because they cannot afford to litigate against GMA. The Complaint also alleges increased prices to cover litigation costs, citing the example of Charlotte Knowles' clothing line price increase. This price increase directly flowed from litigation enabled by the Reinstatement Agreement. GMA's infringement claim against Atallah in a separate action is based on one of GMA's Charlotte Registrations revived by the Reinstatement Agreement. The Complaint asserts that Charlotte Knowles had to increase her prices to reimburse Atallah for its litigation costs from GMA's infringement suit against Plaintiff. The Complaint sufficiently pleads that the Reinstatement Agreement had a direct anticompetitive effect on competition in

6

the relevant market.

Defendant argues in response that "'[t]he protection of Petitioner's trademark interests constitutes a valid procompetitive justification' for its settlement agreements," citing *1-800-Contacts*. That statement is tempered by the Second Circuit's additional comment, omitted by Defendant, that "not . . . every trademark agreement has a legitimate procompetitive justification." *1-800-Contacts*, 1 F.4th at 120. The Circuit explained, "If the provisions relating to trademark protection are auxiliary to an underlying illegal agreement between competitors, or if there were other exceptional circumstances, we would think twice before concluding the challenged conduct has a procompetitive justification." *Id.* The Complaint pleads such exceptional circumstances in alleging that the Reinstatement Agreement improperly revived abandoned marks, and in pleading throughout that those abandoned marks are the basis for GMA's infringement suits. Moreover, Defendant's introduction of a procompetitive justification for the challenged agreement is the second step of the rule of reason analysis and is premature at the motion to dismiss stage. *See Edmar Fin. Co.*, 2023 WL 3570017, at *12; *cf. 1-800 Contacts*, 1 F.4th at 120-22 (engaging in full rule of reason analysis after a trial on the Federal Trade Commission's administrative complaint).

### 2. The Settlement Agreements

The Complaint fails to plead that the Settlement Agreements caused an anti-competitive effect. The Complaint alleges that the Settlement Agreements enable restraint of trade through the use of the settlement payments to fund additional trademark infringement lawsuits by GMA. This funding argument is too attenuated to plead causation. If GMA financed its litigation with money from another source, such as a bank loan, the loan agreement between GMA and the bank would not be considered an illegal, anti-competitive agreement under the Sherman Act. Similarly, here, the Settlement Agreements are not anti-competitive agreements. The Complaint

does not allege that the Settlement Agreements contain anti-competitive terms, as in the Reinstatement Agreement or in the trademark settlement agreements at issue in other antitrust cases. *See, e.g.*, *1-800-Contacts*, 1 F.4th at 109; *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 52 (2d Cir. 1997). Instead, the Complaint challenges the monetary payments GMA obtained, which are typical of settlement agreements and do not raise anticompetitive concerns. *See 1-800 Contacts*, 1 F.4th at 113 (acknowledging that "certain commonplace forms of settlement agreements did not, by the nature of their existence alone, create antitrust liability").

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED as to the Settlement Agreements but DENIED as to the Reinstatement Agreement. Defendant's requests to file a Rule 11 motion and for costs and fees are DENIED.

Dated:  September 7, 2023
         New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE